## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**DONNA A. FOURNEY**,

    **Plaintiff**,

v.                                                                                                Case No. 8:05-CV-869-EAJ

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

    **Defendant.**

_____/

## **FINAL ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Section 405(g) et seq., to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying benefits.[1]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

**A.**      **Standard of Review**

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g)(2003). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the

---

[1] The parties have consented to proceed before the Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. (Dkt. 14).

Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814, F.2d 585, 588 (11th Cir. 1987).

**B.     Factual Background**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on June 18, 2002, claiming an onset of disability beginning November 26, 2001. (T 58-60) Plaintiff's application was denied initially, upon reconsideration, and by the Administrative Law Judge ("ALJ") in a decision issued on October 8, 2004. (T 37-46, 10-18) The Appeals Council declined to review the ALJ's decision (T 3-6), making the ALJ's decision the final decision of the Commissioner.

The ALJ found that Plaintiff was not eligible for DIB benefits because she was not disabled at any time through the ALJ's decision on October 8, 2004. (T 17-18) Disability benefits were denied. (T 18) Plaintiff filed a timely petition for judicial review of the Commissioner's denial of benefits. Plaintiff has exhausted all administrative remedies and the Commissioner's decision is ripe for review under the Act.

Plaintiff was 48 years old at the time of the administrative hearing on August 4, 2004. (T 235) Plaintiff has a high school education and her past relevant work experience consists of the jobs of customer service representative, sales clerk, merchandise displayer, jewelry salesperson, and

restaurant manager. (T 76-81) Plaintiff asserts that hypertension, depression, fibromyalgia, Bell's palsy, spinal stenosis, and headaches have caused her fatigue, lack of concentration, irritability, sleep problems, and dizziness and rendered her unable to work since November 26, 2001. (T 67)

Following the administrative hearing on August 4, 2004, the ALJ found that Plaintiff suffered from the severe impairments of fibromyalgia and chronic headaches, but did not have a severe mental impairment. (T 14) The ALJ determined that Plaintiff's impairments or combination of impairments do not meet or medically equal the impairments listed in Appendix 1, Subpart P of Regulations No. 4. (T 14) The ALJ held that Plaintiff could perform a limited range of "light" work activity.[2] (T 15) Specifically, the ALJ noted that Plaintiff can lift, carry, push, and pull 20 pounds occasionally, and ten pounds frequently, can sit for six hours in an eight hour workday, and stand or walk for six hours in an eight hour workday, and must have a sit/stand option exercisable at will. Id. Relying on the testimony of a vocational expert ("VE") in response to a hypothetical question which incorporated these limitations, the ALJ concluded that Plaintiff could perform her past relevant work as a customer service representative. (T 16) Based on the VE's testimony, the ALJ found, in the alternative, that Plaintiff could perform the jobs of office helper, survey worker, surveillance system monitor, and receptionist, which represent a significant number of jobs in the national economy. (T 16-17) In reaching the conclusion that Plaintiff had not been under a "disability" since November 26, 2001, the ALJ held that Plaintiff's statements regarding her symptoms were not wholly credible. (T 15)

---

[2]Light work, defined at 20 C.F.R. § 404.1567(b), involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Light work may require a good deal of walking or standing, or may involve sitting most of the time with some pushing and pulling of arm or leg controls.

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

**C.     Discussion**

Plaintiff argues that the Commissioner erred by: (1) failing to develop the evidence regarding Plaintiff's mental impairments, (2) failing to develop the evidence regarding Plaintiff's fibromyalgia, and (3) posing incomplete hypothetical questions to the vocational expert. (Dkt. 22 at 6-19). Defendant maintains that the ALJ's decision is supported by substantial evidence, and that the ALJ evaluated Plaintiff's claims under proper legal standards. (Dkt. 23).

   **1.  Consideration of Plaintiff's Mental Impairments**[3]

Plaintiff argues that the ALJ did not properly evaluate Plaintiff's mental impairments. Plaintiff claims that her mental impairments should have been considered severe based on the examination and evaluation of Scott D. Machlus, Ph.D. ("Dr. Machlus") and that the ALJ improperly weighted the opinions of non-examining consultants over Dr. Machlus's opinion. Plaintiff contends that the ALJ erred in considering the Plaintiff's lack of treatment for mental impairments because Plaintiff's financial constraints excuse her failure to seek treatment. Plaintiff also states that the ALJ misconstrued Plaintiff's activities of daily living in considering her mental impairments.

At step two of the five-step evaluation process, the ALJ determines whether a claimant has a "severe impairment" within the meaning of 20 C.F.R. §404.1520(a)(4)(ii). This step "acts as a

---

[3]Although Plaintiff characterizes this argument as the failure to develop a full and fair record and cites legal authority regarding the ALJ's duty to develop the record, Plaintiff's discussion instead focuses exclusively on the ALJ's evaluation of the evidence regarding Plaintiff's mental impairments. (Dkt. 22 at 6-14).

4

filter" and the finding of any severe impairment or any combination of impairments that together qualify as severe at this step allows the ALJ to continue the disability analysis. Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987). As noted above, the ALJ found that Plaintiff's fibromyalgia and chronic headaches were severe impairments, but that her mental impairment was not severe. (T 14)

In assessing medical evidence in a disability case, the ALJ is required to state with particularity the weight given to different medical opinions and the reasons therefor. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (citation omitted). It is not for this court to re-weigh the evidence; as long as there is substantial evidence to support the Commissioner's decision it must be affirmed. Parker v. Bowen, 788 F.2d 1512, 1521-22 (11th Cir. 1986) (en banc).

The ALJ discussed Dr. Machlus's October 2002 evaluation of Plaintiff, including Dr. Machlus's note that Plaintiff drove herself 45 minutes to the appointment and that she did not have any trouble driving. (T 13) The ALJ noted Dr. Machlus's statement that Plaintiff reported "having severe neck and back pain, which she indicated has lead to difficulty sleeping, poor concentration, weight gain, anhedonia, and suicidal thoughts." (T 13) The ALJ summarized Dr. Machlus's findings that during the examination Plaintiff was fully oriented, she had appropriate mood and affect, her conversation was spontaneous and productive, and her answers to questions were relevant and coherent. Id. The ALJ recognized Dr. Machlus's opinion that Plaintiff had deficits in memory, but was able to repeat a sequence of five numbers and remember basic facts. Id. Finally, the ALJ observed that Dr. Machlus diagnosed Plaintiff with major depression and had assigned her a Global Assessment of Functioning ("GAF") of 45. Id.

The ALJ then recounted the opinions of state agency consultants that Plaintiff had only mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace.

Id. The ALJ concluded that Plaintiff did not have a severe mental impairment. (T 14) In reaching this decision, the ALJ gave the greatest weight to Plaintiff's treating physician Farrukh Zaidi, M.D. ("Dr. Zaidi"), lesser weight to the opinions of examining consultants, including Dr. Machlus, and least weight to state consultants' opinions. (T 15) The ALJ's consideration of Dr. Machlus's opinion under this standard is appropriate, as that physician is not Plaintiff's treating physician. McNamee v. Social Sec. Admin., 164 Fed.Appx. 919, 923 (11th Cir. Jan. 31, 2006) (ALJ not required to give examining consultant physician's opinion the substantial weight due to the opinion of a treating physician).

The ALJ also stated that he rejected the opinion of Dr. Machlus regarding Plaintiff's GAF score of 45 because it was inconsistent with the other medical and non-medical evidence in the record. (T 15) This was not error. See Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (citations omitted) (the ALJ may reject any medical opinion if the evidence supports a contrary finding). The ALJ properly exercised his discretion in weighing the evidence and resolving inconsistencies among the various medical opinions in the record.

In considering Plaintiff's mental impairments, the ALJ also noted Plaintiff's lack of treatment for mental impairments, stating that "[T]he medical evidence includes no mental health treatment sought by the claimant." (T 13) Plaintiff argues that the ALJ improperly considered Plaintiff's failure to seek treatment because Plaintiff is financially constrained from seeking such treatment.

"A claimant may be denied benefits pursuant to [the regulations] if the [Commissioner] finds that he failed to follow prescribed treatment and that if he had followed the treatment, his ability to work would be restored." Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (citing Patterson

v. Bowen, 799 F.2d 1455, 1460 (11th Cir. 1986). However, a plaintiff's poverty excuses noncompliance with a treatment plan. Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988).

In Dawkins, the ALJ's decision to deny disability benefits was based "primarily if not exclusively" on the plaintiff's noncompliance with the prescribed treatment. 848 F.2d at 1212. Here, Plaintiff's failure to seek mental health treatment was considered, but the ALJ's decision that Plaintiff's mental impairments were not severe was based primarily on the medical evidence in the record. (T 14) The ALJ's mention of Plaintiff's failure to seek mental health treatment is not reversible error because other substantial evidence in the record supports the ALJ's decision that Plaintiff's mental impairments do not qualify as a severe impairment. See Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003) (distinguishing Dawkins where ALJ's denial of benefits was based on other evidence).

Finally, Plaintiff asserts that the ALJ misconstrued Plaintiff's activities of daily living in evaluating her mental impairments. The ability to engage in everyday activities of short duration such as housework or fishing does not disqualify a claimant from receiving disability benefits. Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997). However, the Commissioner may properly rely on a claimant's daily activities, among other evidence, in determining whether a claimant is entitled to disability benefits. See, e.g., Markham v. Califano, 601 F.2d 533, 534 (10th Cir. 1979).

Here, the ALJ considered the non-medical evidence that Plaintiff "was able to drive long distances on more than one occasion during the relevant time period, and she at one time even indicated that she was able to concentrate on what she was doing, and finish at least simple job tasks." (T 15) The ALJ's consideration of this evidence of Plaintiff's daily activities, in conjunction

7

with the other medical and non-medical evidence in the record, was not error.

### 2. Consideration of Plaintiff's Fibromyalgia

Plaintiff maintains that the ALJ failed to evaluate Plaintiff's fibromyalgia under the correct standard and should have re-contacted Plaintiff's treating physician for additional information or clarification on Plaintiff's symptoms attributable to fibromyalgia.

As this court has previously recognized, it is particularly difficult to assess the severity of a condition like fibromyalgia where the symptoms are entirely subjective. Morrison v. Barnhart, 278 F.Supp.2d 1331, 1335 (M.D. Fla. 2003). In such instances, the opinion of a treating physician is especially valuable to the disability determination. Id. at 1335-36. Here, the ALJ determined that Plaintiff's fibromyalgia was a severe impairment, i.e. one that significantly limits Plaintiff's physical and mental ability to do basic work activities. See 20 C.F.R. §404.1520(c).

Plaintiff argues that the ALJ did not fully evaluate Plaintiff's non-exertional complaints and should have re-contacted Plaintiff's treating rheumatologist for clarification of his report. Plaintiff relies on a note from Meg. S. Allen, an "ARNP" who worked with Dr. Zaidi, which states that Plaintiff would not be able to work for over a year. (T 207-09) Plaintiff contends that the ALJ should have re-contacted Dr. Zaidi to clarify whether he shared this opinion. (Dkt. 22 at 17).

While it is sometimes appropriate to re-contact physicians to clarify or resolve discrepancies in a physician's records, in this case re-contacting Dr. Zaidi was not necessary. Even if Dr. Zaidi had endorsed the ARNP's opinion that Plaintiff could not work, such ultimate issues of disability are reserved for the Commissioner rather than Plaintiff's physicians. See Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987) (the ALJ may discount a treating physician's conclusory statements regarding inability to work); see also 20 C.F.R. §404.1527(e)(1) ("A statement by a medical source

that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"). Recontacting Dr. Zaidi for this information would not have provided additional medical evidence to the ALJ, nor would it have altered the fact that the ALJ, rather than a treating physician, is required to make the decision regarding Plaintiff's ability to work. The record regarding Plaintiff's fibromyalgia was sufficiently developed to allow the ALJ to make an informed decision as to whether Plaintiff qualified as disabled, and the ALJ considered Plaintiff's fibromyalgia under the proper standards.

### 3. Questioning the Vocational Expert

Plaintiff argues that the Commissioner erred by posing incomplete hypothetical questions to the vocational expert ("VE") that did not include Plaintiff's mental impairments, fatigue, migraine headaches, dizziness, and side effects of Plaintiff's medication. (Dkt. 22 at 19).

Once a claimant has met his initial burden of showing that he cannot do past work, the testimony of a VE is generally required to determine whether the claimant's residual functional capacity permits him to perform other work. Chester v. Bowen, 792 F.2d 129, 131-32 (11th Cir. 1986) (citation omitted). The Commissioner may use this vocational testimony to show that there are other jobs in the national economy which plaintiff can perform. Id. In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987)). The ALJ is only required to include those restrictions he recognizes in the hypothetical question to the VE. See Bowling v. Shalala, 36 F.3d 431, 435-36 (5th Cir. 1994).

In this instance, the ALJ relied on the testimony of a VE, Steven Simon, to establish that

Plaintiff could perform her past relevant work of customer service representative and other jobs in the national economy. (T 256-62) The ALJ asked the VE the following hypothetical question:

> "Now, let me give you as the first hypothetical that to assume that we have an individual with a similar profile as the claimant regarding her age, education, vocational background and the transferable skills that you have given and let's assume she has a history of osteoarthritis and fibromyalgia, depression, anxiety, and some headaches. Let's assume further for purposes of this hypothetical that she would retain the following residual functional capacity. Let's assume that she would be able to occasionally lift 20 pounds and frequently ten pounds and stand, walk and sit for about six hour . . . out of an eight hour workday and no significant restrictions with pushing and/or pulling. Let's assume that she would have a – no significant postural or manipulative or visual communicative or environmental limitations. She would be able to maintain attention and concentration and pace. She would experience some pain, but it would not interfere with the above functions I have given. Assuming those impairments and limitations, would this individual be able to perform any jobs that exist in significant numbers in the national economy or any other of the past relevant work that she performed before?"

(T 258-59) The VE responded in the affirmative and testified that such an individual could perform all of Plaintiff's past relevant work with the exception of merchandise displayer. (T 259)

The ALJ then asked the VE to consider a second hypothetical:

> "Assuming . . . the same individual with a similar profile given same impairments, [sic] but that the – that she in addition to all those limitations already given she would require a sit/stand option, would that change your opinion?"

(T259-60) The VE stated that an individual with those limitations could perform the jobs of customer service representative, office helper, survey worker, surveillance system monitor, receptionist, and information clerk. (T 260-61)

The ALJ posed a third hypothetical:

> ". . . [A]ssume that we have the same individual, but let's assume that she would experience pain which would be at a severe level frequently and would interfere with her ability to perform or sustain attention, concentration, pace and perform tasks in a timely manner. Any jobs under those ones?"

(T 261-62) The VE testified that there were no jobs which an individual with these limitations could

perform. (T 262) Finally, Plaintiff's counsel asked the VE to add, to the first hypothetical posed, the condition of "a serious major depressive disorder" with "serious symptoms and [the individual] wouldn't be able to sustain work five days a week, eight hours a day," and asked if that condition would eliminate the jobs the VE had listed. (T 262) The VE responded in the affirmative. Id.

The ALJ's hypothetical to the VE encompassed the limitations which the ALJ recognized. See Bowling, 36 F.3d at 435-36. The ALJ properly disregarded Plaintiff's mental impairments, for reasons discussed above. Therefore Plaintiff has not shown any error in the vocational expert testimony upon which the ALJ relied in determining that there were jobs in the national economy which Plaintiff could perform.

### D.     Conclusion

The AlJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner denying Plaintiff's application for Disability Insurance Benefits is therefore affirmed.

Accordingly and upon consideration, it is **ORDERED** that:

(1)     the decision of the Commissioner is **AFFIRMED** and this case is **DISMISSED**, each party to bear its own costs and expenses; and

(2)    the Clerk of Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. 405(g).

**DONE AND ORDERED** in Tampa, Florida on this 14th day of June, 2006.

_____
ELIZABETH A JENKINS
United States Magistrate Judge